And the first case on for argument is Whole Foods Market Group v. NLRB. Good morning, Your Honors, and may it please the Court. Before the Court for review is the lawfulness under the National Labor Relations Act of the no recording policy at Whole Foods Market. Whether the Whole Foods recording rule is reviewed by this Court under the Board's decision under Lutheran Heritage or the Board's more recent decision under Rio, the conclusion must be that the policy is lawful because the express purpose of the policy protects what the Board has called the very essence of Section 7 rights, which is open and candid communication, and it does so free of what the Board itself has acknowledged is the chilling effect of recording. In fact, the Board reached its decision here and was only able to reach its decision here by ignoring its own precedent, finding that employees would reasonably construe a policy to apply to the lawful purpose for which it recites, by ignoring its own precedent that acknowledges the chilling effect of recording, and by ignoring the substantial record evidence of the legitimate interest of protecting Whole Foods' participatory culture. Would the rule be applied to Section 7 activity? In other words, someone's trying to record something in furtherance of activities? Yes, Your Honor. And in fact, Lutheran Heritage and a whole panoply of other Board cases say that the limits of Do you think an employer can bar an employee from using recording equipment to record a meeting even if it's in furtherance of Section 7 activity? Not only do I think that, Your Honor, the Board thinks that. The Board said in Flagstaff it was permissible. Not the Board in this case. The Board in this case purports to be applying and does not disavow its decision in Flagstaff. Remember, Flagstaff, Your Honor, is a circumstance where we have a hospital with a no recording policy. But that's because there's the countervailing problem which we all run into, I think everybody in this room runs into, having to do with HIPAA and the protections available under HIPAA. Yes, Your Honor. But back to what Judge Chin is asking, or at least what I take from what Judge Chin is asking. I mean, it just seems to me that there are certain Section 7 activities that employees acting in concert ought to be able to record in furtherance of those activities. And why does this policy, why can't this policy be modified, cut back to some extent to exclude those so that it then comes in conformance? So these two questions, Your Honor, get us to the heart of what the problem is in this decision. I'm trying. I know you are, Your Honor. We've given it a lot of thought, so let me share. First, I want to just analytically point out that Flagstaff, the Board, do not ever argue, and it would be inconsistent with decades of Board authority, to say that the exercise of Section 7 rights is unlimited or unbridled. And so we have all sorts of Section 7 rights that get limited. I can go back to that if Your Honors are interested, but the cases are in the brief and we can talk more about that analytically. The second question is, what is the Section 7 right we are protecting? Historically, the Board has said the Section 7 rights, what we mean by that is the ability to communicate about terms and conditions of employment, not what is the best way to memorialize those communications. Are you suggesting that recordings can never constitute Section 7? No, Your Honor, and let me get to that. I'm not saying they never do. I'm pointing out that for the first time, the Board in Rio says that recording itself may be a Section 7 right, and the Board says it's protected where it is concerted and where— Going back to Judge Hall's question, why can't the policy be slightly modified to make it clear that it's not intended to bar recording in furtherance of Section 7 activity? You know, Your Honor, I wish that were possible, but under Board authority— Why isn't it possible? Because the Board says that kind of savings clause, that kind of prescription, that doesn't work under Section 7 of the Act. And what is particularly frustrating about the Board's decision here is not just the ignoring of all of the precedent, not just the ignoring of the record evidence, but the Board never explains or provides any indication about how Whole Foods might narrowly tailor its rule with any reasonableness and any real-world applicability. So, for example, the Board rejects out of hand those situations that Whole Foods thinks most need protection, where private information is disclosed, where we are discussing proprietary business information. The Board thinks all of that is irrelevant. Does the Board have the authority to rewrite the policy or to hold that the policy would be lawful if it's construed to be—to not encompass Section 7 activity? What the Court has the right to do is to instruct the Board as to what the appropriate limits are for finding a policy lawful or unlawful, and the present decision ignores prior precedent and gives no real-world guidance as to how you could— Ms. Chin's question is, we don't? No, quite the contrary, Your Honor. So could we say the policy would be okay if it says this? I mean, we could do the lawyering. We've all been—or all are— Your Honor, you could write a decision that says, consistent with Board precedent, this policy is lawful, and the only thing that makes it unlawful, if you conclude it does, is carving out and telling us what that carve-out is, because the Board hasn't, and it's very clear that the Board is not interested in doing that. But could the employer do it? I mean, in other words, the Board is weighing in on the rule as worded. I don't think it is possible, Your Honor, to carve it out, save for a general savings clause that might say, none of this is intended to impinge upon your right to engage in concerted protected activity. That's insufficient. The Board would find that insufficient, and that's quite clear under Board authority. But even the prohibition in Flagstaff was more narrowly tailored than the one at issue here. In Flagstaff, it talked about prohibiting recording of patients and of equipment and of the facilities. It can't be that there is no set of language that might operate to tailor the prohibition that is here, that I think by your own admission is so broad that it would capture any recording of any kind, including that, which is Section 7 activity, correct? Yes, Your Honor, but I urge the Court to consider that what we're focusing on here, candidly, is the tail wagging the dog. Your Honor, the circumstance in which we would have recording in and of itself, being concerted protected activity, is pretty rare. So what we're preserving is memorialization. And what is at risk is the fact that I could have a conversation that I'm having about an ill child. I could have a conversation in which my termination and my behavior is being discussed by my peers, recorded by me. There are thousands of interactions that take place. And the Board has swept them all aside for the chance that we're going to have concerted protected activity of recording that is outweighed by those interests. Would the Board not sweep them all aside but say that the prohibition as written is overly broad because it captures Section 7 activity? Not saying that there should be no prohibition whatsoever on recording. It's just that the way it's drafted currently is overly broad. Neither, Your Honor. What the Board said is that, and I'm quoting now, the Respondent's business justification is not without merit, but is based on relatively narrow circumstances, such as annual town hall meetings and termination appeal panels, and is not nearly as persuasive or compelling as the pace and privacy interest in Flagstaff. It thus fails to justify the rules of unqualified restrictions on Section 7 activity. The Board has never previously said that the standard here is Flagstaff, nor does it explain. There is one sentence, Your Honor, and I just read it, in which the Board justifies its rejection of the rule under Rio and Flagstaff. Thank you, Ms. McKenna, and you've reserved three minutes. I did, Your Honor. Thank you. Podium, if it's more comfortable for you, we'll go down. Yes. Thank you very much, Your Honor. Good morning. Good morning. So can we start you, perhaps? Sure. Focusing on whether the company and or the Board and or this Court, that being the worst choice, I think, can suggest modifications to the policy that would bring it in compliance with, sorry, that would make it non-violative of Section 7. Sure. In these instances and in these cases, the Board doesn't issue advisory opinions as to what would be lawful. But nonetheless, in this case, you can look to what the Board said, and when it makes its rules by adjudication and the series of cases it has done, what could be something, I can't speak for the Board here, but what could be changed about this policy that would more narrowly tailor it so that it didn't encompass Section 7 activities? So, for example, one of the problems with the rule is that it doesn't specify the town halls and the types of meetings and the information that Ms. McKenna was talking about. The Board didn't say that's not important. The Board just said that in this instance, employees who were talking not in one of those meetings about sensitive information may believe that recording their manager speaking to them, which the Board and the D.C. Circuit has said constitutes protected activity, can be swept up. So it would be a more narrowly tailoring the language of the rule to the employer's legitimate interests, which the Board recognized here and recognizes in other cases such as Flagstaff. So the other point that I'd like to make on that is it's true. Occasionally there have been cases where the Board has said in some rule that if an employer just puts at the end of the sentence, but this doesn't protect, this doesn't rather infringe on Section 7 activities, it might not be sufficient if employees who are not labor lawyers do not understand what that means. So the key here is that the burden is on the employer in these instances when there's a charge filed at the Board that there is language that can chill an employee's Section 7 right to demonstrate that the employer's legitimate interest overrides that. And simply put, this rule here did not do that. So in addressing perhaps... As a general matter, I would think an employer is within its rights to say we don't want our employees making surreptitious recordings. I don't want my law clerks recording me with their phones what I'm saying to them. So I don't have a problem with the general concept, but the Board's holding interferes with an employer's ability to do that because of the possibility that there is a chilling on Section 7. So isn't there some way to work this out? Right. I would say that going to the holding of this particular case in Rio, which is not all recording is protected activity. It's that workplace recording is protected activity if employees are acting in concert for their mutual aid and protection and no overriding employer interest is present. So your example of your law clerks in discussing cases with privileges that come with that would be a legitimate employer interest. What the problem is in the case here in Whole Foods... It's in the pretty manual with all the drawings. Whole Foods seems to be trying to encourage a place where employees can have open and frank discussion. I think it's a fair argument that they're more likely to engage in Section 7 activities if they don't have to worry about being recorded, that someone's going to rat them out to management because they're saying something that's anti-management. So I do think that there are some positives to this, but on the other hand, I understand that it's a blanket rule and that's the concern. Right. The concern is the chilling effect on Section 7 that gets swept up in it. But does it really chill Section 7 activity or does it just eliminate one tool in the arsenal? In other words, you cannot make surreptitious recordings anymore, but you can still engage in Section 7 activity. I would have two responses to that, Your Honor. First, recording is not simply memorialization. If you take a look at the Hawaii Tribune-Herald case, which was upheld by the D.C. Circuit in the Stevens case, what was held to be protected concerted activity in that case was the planning to record a conversation and the actual recording itself. And because it is not merely memorialization, this rule does sweep up actual protected activity. Now, it is true. There's other protected activity employees can engage in that doesn't include taping or recording or taking photographs, but- Is the recording itself the protected activity? The Board's decision in this case and in Rio is that the recording itself, not only is the recording itself what cannot be the protected activity, but that in the instances when the recording is part and parcel of the race gestae of the protected activity, you cannot have a rule that would sweepingly prohibit it without the narrowly tailored employer justifications like the ones that are here. So what- give me, if you will, but us, the parameters of what makes the recording protected activity. Sure. The recording is protected activity because the employees under Section 7 are able to- No, no, no. I want to say, is this protected activity or not protected activity? It's okay. So judge, to decide, or employers, to decide whether it's protected activity or not, these are the factors you have to look at, and they are- They are. Are the employees working together in concerns about mutual aid and concern, and is it concerted? All right. So recording? I don't hear the word recording there. Sure. Are they planning to record, for example, a meeting like in Stevens or Hawaii Tribune where an employee is about to go be discussed, questioned, or interrogated by an employer about a disciplinary matter where they think they're allowed to have a representative present, and they believe the employer is not going to let the employees have a representative present, so they decide we are going to tape this meeting so that if my colleague is told that she cannot have someone with her, we are going to be able to demonstrate a violation of the National Labor Relations Act. So the employee would then take her iPhone in with her and turn it on and point it at them and do selfies or whatever, and that would be recorded? Right. And there's been cases where that has come in as evidence to demonstrate an unfair labor practice. There could also be, for example, there's a whole line of cases- That kind of recording- That kind of recording- The board's view is protected activity under Section 7. That's correct, and in fact- And are there any others before we get off, before we start ticking these off? Sure. Some of the other examples are given in the decision, so if an employee decides we see some safety and health violations that are occurring, we're going to get together and decide that what we need to do in order to advance for our cause that there is this safety problem, we need to have it on tape. We need to have a video- We need to document that there's not a guard on the slicer so that when people are working in the deli section, they're not cutting their fingers off. Correct, and although employees may be able to discuss it among themselves and communicate among themselves, it doesn't mean that the act of recording is- Do employees have to, can they act individually doing this, or do they have to essentially act in concert saying, wherever two or three are gathered in the name of safety, then we will, they'll be able to record. Well, the board has a lot of jurisprudence on that, and it's in this particular standard as well, which is it's protected. If they are acting in concert for mutual aid and protection- Is that a necessity? Yes, it must be a necessity for them to engage in that conduct and to have it be protected concerted activity. And so in this instance, I'd like to emphasize that the board didn't dismiss out of hand any of the employer's concerns, but merely said, as I believe your honors recognize, that this rule is not narrowly tailored, and the interest that employees have in their Section 7 rights was not outweighed by a rule that would have reflected the employer's legitimate interest. And again, emphasizing here the standard of review, which is that the board, given that it has seen so many cases and in its expertise, analyzed what is protected activity under the National Labor Relations Act, it came to the conclusion under these- You also have the ALJ going the other way, you have a dissent, so it's really two to two in terms of the decisions below. It's true, and the standard of review isn't any different when the judge disagrees with what the board ultimately found, but the inferences- I'm just suggesting it's a close question, and perhaps not as clear as you are suggesting. I would say that it is a question on which different people at different times have disagreed under the circumstances of this case, but I'd say here, in such a close call, your honor, the- Yes, that would be what the board's position is. And again, in this instance, it might even be a closer call had there been language that was more narrowly tailored that wouldn't chill the employee's rights under the Act. And so for all of these reasons, I see my time is running out. We would ask that you enforce the board's order in full. Thank you. Thank you, Ms. Beard. Ms. McKenna. Thank you, your honor. You have three minutes. So what's the problem here? The problem is that we all have this gut sense that it would be great if you could memorialize things that you think affect your concerted and protected activity. That's the truth. That's what we all think. But the truth of the matter is, as Judge Chin's question indicated, this is really a question of what's the best tool here. And the board, prior to its decision in Rio, never said that recording was the best tool. In fact, its decision said the opposite. We know recording communications has a chilling effect, and that's not the purpose of Section 7. The purpose of Section 7 is to encourage spontaneous and open dialogue. This court has to decide, under the existing board precedent, is that precedent faithful to the act? You have seen our briefing. We think neither Lutheran Heritage nor Rio is faithful. Let us assume . . . Can I . . . Yes, your honor. Can I just go back to my trial judge days? I noticed that there were other points along the way, and you settled everything except this one. Yes. Have there been settlement discussions? Would it be useful to go into our mediation program? We have two full-time professional mediators now. No, your honor. With all due respect, Whole Foods has a really enormous participatory culture. My client shares things with its team members that, candidly, as their counsel, this is not a waiver of privilege, I find shocking. They talk about their prospective real estate endeavors. They talk about pricing policies. They hear all sorts of information. That's the employer's proprietary interest, saying nothing of the employee's concerns about privacy around their terms and conditions of employment. So when you're going to review this rule, and we're talking about Rio, it is candidly not honest for the board to say that it is entitled to deference in this case. Because even the board says the recording policy is narrow, it's considered a protected activity, but it also has to be balanced against the employer's interest, the community, the workplace interest here. The board in this decision did not even attempt to explain why this rule was not entitled to protection. The board doesn't explain. There is one sentence, one sentence, that ignores the record evidence here. You think that the employer's interest in this case is on par with the interest in other cases, such as patients' rights and safety issues that have been. Your honor, I can't- There's some difference there. Yes, absolutely. I am not saying that this case is flagstaffed. That's not the standard. Under Lutheran Heritage, under Rio, the standard is not do we have a level of privacy and interest in flagstaff. That's not the standard. The standard is, is there an overriding interest? And the question is whether- Does that outweigh- Yes, the rare occasion where the actual recording in and of itself would be concerted protected activity. And so the board didn't attempt to give any explanation of why all of the record evidence that talked about the sensitive and is not entitled to protection and should be swept aside. In Flagstaff, board didn't have any problem with that. I want to record a doctor stealing medication. I can't do that. Does Whole Foods policies have other protections to be, or language to protect this proprietary information separate and apart from the prohibition on recordings? I'm assuming that there are mechanisms in the handbook that prohibits employees from disclosing certain proprietary information, so you don't need the recording prohibition to be able to protect- There is some, Your Honor, but it is narrowed, as I recall it, to situations where you'd be taking pictures of company products, stuff like that. But there are ways to protect that type of information that you have identified as sensitive, separate and apart from a prohibition on recording, which could encompass section seven activity. Yeah, the only thing I would say, Your Honor, is if I have an employee that is recording that proprietary information, and I try and discipline them, not under the recording policy, but under the policy that says that may not disclose proprietary information, it's very clear that's not going to fly before the board. The board is going to assume that the taping is concerted protected activity. The whole problem with the board's decision here is it is driven by this sense, we ought to be able to protect under pure recording those circumstances where someone is memorializing, engaging in concerted activity, and that's really what we're talking about here. But even if you apply the board's decision in Rio, this policy ought to survive, because the overriding interest is present, and the evidence was in the record, and the board did not discuss it in this decision. Thank you very much, Ms. McKenna. Thank you, Your Honor. Well argued. We will reserve decision.